[No. 19869.   Department One.   December 10, 1926.]

EDWARD PITTWOOD *et al., Appellants,* v. SPOKANE
SAVINGS & LOAN SOCIETY *et al., Respondents.*[1]

[1] MORTGAGES (15, 23)—ABSOLUTE DEED AS MORTGAGE—AGREEMENT
TO CONVEY—EVIDENCE—SUFFICIENCY. An absolute deed will not
be held to have been intended as a mortgage where the intention
of the parties and the presumption of law, the circumstances,
and value of the property as compared with the debt which
was liquidated, all tended to establish that it was what it ap-
pears to be upon its face, a deed with option to repurchase.

[2] DEEDS (4)—CONSIDERATION—SUFFICIENCY. There was ample con-
sideration for a mortgagor's absolute deed, with an option to re-
purchase within a limited time, where the debt was overdue,
with interest and taxes accumulating which the mortgagor had
no immediate hope of paying, and he thereby secured his right
of redemption within one year with considerable saving of costs.

[3] MORTGAGES (20)—ABSOLUTE DEED AS MORTGAGE—EXISTENCE OF
DEBT TO BE SECURED. The fact that a mortgagor's absolute deed,
with a right to repurchase, was not intended as a mortgage is
not necessarily shown by the fact that the mortgage was not
released and that statements were made tending to show the con-
tinuance of the relation of debtor and creditor, where these cir-
cumstances were sufficiently explained.

[4] MORTGAGES (19)—ABSOLUTE DEED AS MORTGAGE—INADEQUACY OF
PRICE. There is no such disparity between the value of mort-
gaged property and the amount of the debt as to show that the
mortgagor's absolute deed with an option to repurchase was not
intended as a mortgage, where the indebtedness was $33,000 with
accumulating interest and taxes, and the trial court found that
the property was worth approximately $40,000.

[5] ESTOPPEL (28)—EQUITABLE ESTOPPEL—INCONSISTENCY OF CONDUCT
IN GENERAL. A savings and loan association, prohibited by
statute from loaning more than fifty per cent of the value of
the property, is not estopped to assert that property on which
it had loaned $35,000 was not worth $70,000, even though it
knowingly violated the statute; and especially not after several
years when the property may have depreciated in value.

Appeal from a judgment of the superior court for
Spokane county, Oswald, J., entered June 30, 1925, in

[1]Reported in 251 Pac. 283.

favor of the defendants, upon dismissing an action by the plaintiffs to have a deed declared a mortgage. Affirmed.

*O. C. Moore,* for appellants.

*Hamblen & Gilbert, James A. Brown* and *Lund & Dodds,* for respondents.

BRIDGES, J.—The question in this appeal is whether a certain deed was intended to be either a mortgage or an extension of the due date of a previously given mortgage.

On the 15th day of November, 1919, the Fireproof Storage Company gave to the respondent, Spokane Savings & Loan Society, its mortgage covering lot 7 in block 6 of First Addition to Third Addition to Railroad Addition to the city of Spokane Falls (now Spokane), hereinafter called the warehouse property, to secure an indebtedness of $35,000, evidenced by three promissory notes executed and delivered by the storage company to the loan society. One note for $1,000 was due one year from date, another for $1,000 was due two years from date, and the third for $33,000 was due November 13, 1922. These notes bore interest at the rate of eight per cent per annum, payable semi-annually. Thereafter, and on June 21, 1923, the storage company deeded the mortgaged premises to Edward Pittwood and Elizabeth Pittwood, his wife, the plaintiffs and appellants herein, who owned all of the capital stock of their grantor. A few days after, they obtained title to the property, and on June 26, 1923, they mortgaged it, together with other real estate, to the defendant E. H. Stanton, to secure an indebtedness of $7,873.24, payable on or before one year from date, with interest at eight per cent per annum. So far as the warehouse property is concerned, this was a second mortgage.

On the following December 4, the plaintiffs deeded the warehouse property to the loan society, and on the 15th day of the following month, to wit, January, 1924, the loan society gave to the plaintiffs an option until December 1, 1924, to purchase the property by paying $43,764.25, together with interest thereon from December 1, 1923, at the rate of seven per cent per annum, and any and all sums which the loan society might pay in taxes, assessments or insurance premiums, less, however, any rentals received by the loan society during that period. On the same day, the loan society gave to the defendant Stanton a like option for $35,-655.75, together with interest and any taxes, assessments or insurance premiums which might be paid; the Stanton option being made subject, however, to that of the plaintiffs.

Although the instruments did not so expressly state, it would appear that the purchase price of $43,-764.25, provided for in the option to the plaintiffs, represented the amount then due on the mortgage previously given by the storage company, plus certain interest and taxes and the amount due to the defendant Stanton on the notes given him by the plaintiffs. And the amount of the purchase price contained in the Stanton option is evidently the amount of the then indebtedness owing to the loan society. The latter refused to take the deed above mentioned, unless Mr. Stanton would first release his second mortgage as to that property, which was done. Subsequent to all of the above transactions, the loan society deeded the mortgaged property to the defendant Pacific Transfer Company.

The deed from the storage company to the plaintiffs was made expressly subject to its mortgage to the loan society, but they did not assume or agree to pay the indebtedness. At no time were the plaintiffs directly

indebted to the loan society, nor did the option to pur-
chase, given by the loan society to the plaintiffs, ob-
ligate them to purchase.  For the purposes of our dis-
cussion, we will assume that the transfer company was
not an innocent purchaser and does not stand in any
more favorable position than the loan society.

Under the foregoing facts, and others which we will
soon relate, the plaintiffs contended that the deed
which they gave to the loan society was nothing but a
mortgage; or, at most, an extension of the due date of
the prior mortgage—that is—the one given by the stor-
age company to the loan society.

Additional facts are these:  The two $1,000 notes
given to the loan society were paid when due.  The
other note for $33,000 was due November 13, 1922, but
was not then paid, nor was it paid when, a little more
than a year later, the plaintiffs deeded the property
to the loan society.  At that time there was unpaid
accumulated interest of nearly $1,000 and taxes, which
had been paid by the loan society, but which the plain-
tiffs were obligated to pay, and which had become de-
linquent, in more than the sum of $1,600.  In other
words, the plaintiffs were unable to pay either the
principal of, or the interest on, the $33,000 note, al-
though it was long past due.  Nor had they been able
to pay the taxes on the property covered by the mort-
gage.  Under these circumstances, the loan society
began to press for payment.  It wrote the plaintiffs
several letters, calling their attention to their delin-
quencies and informing them that a foreclosure must
be had unless the debt was paid or materially reduced.
Finally, the plaintiffs were informed that, if they did
not pay the indebtedness or materially reduce it, fore-
closure would be commenced on a definitely stated date.
Meanwhile, the warehouse property was unoccupied

and was deteriorating some in value. Certain portions of it had been removed, and it was quite badly out of repair. The plaintiffs, in an effort to comply with the demands of the loan society, were constantly trying to sell the property, but apparently were unable so to do. It was under these conditions that they deeded the property to the loan society and took an option to repurchase, as we have previously mentioned. Not till several months after it received the deed to the property did the loan society release its mortgage or surrender to the plaintiffs, or to anyone else, the notes which evidenced the $35,000 indebtedness.

The plaintiffs testified that it was understood and agreed that the deed should have the effect of extending the due date of the previous mortgage, while the testimony of the defendant was exactly to the contrary. There are a few additional facts which we shall mention later.

The trial court dismissed the plaintiffs' action, and this appeal results.

[1] It is the settled law of this state, that the character of such transactions as we have recited is fixed at the time of their inception, and that whether a deed should be construed as a mortgage depends upon the intention of the parties. It is also settled that, when property is conveyed by a deed absolute in form, the presumption of law is that the transfer is what it appears to be, and that he who would assert that it was given as a mortgage must so show by clear and convincing evidence. *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21. This case has often been cited by us and its doctrine approved.

In determining whether a deed was intended as a mortgage, all surrounding circumstances may be inquired into; such, for illustration, as the conduct of the parties, the value of the property as compared to

the indebtedness which the deed is supposed to have liquidated, and whether the relationship of debtor and creditor continues to exist.

Measured by the foregoing rules of law, it is plain to us that the parties to this transaction intended that the deed in question should be what it appears upon its face to be, that is, an absolute conveyance of the property, and not either a mortgage or an extension of the previous mortgage.

[2] It is contended by the appellants that there was no consideration for the deed. With this contention, we cannot agree. Here was an indebtedness of $33,000, which was more than a year overdue, and the interest and taxes had accumulated. The mortgage security was depreciating in value and was not bringing in any rents. Immediate foreclosure was inevitable. The most the appellants could hope for was a year for redemption. A foreclosure would entail a very considerable additional expense for attorney's fees and costs, and would interfere more or less with a sale of the property. The appellants had no immediate hope of paying the indebtedness. Under these conditions, they did that which many another man has done under identical circumstances, to wit, gave the absolute title to the mortgagee in satisfaction of the indebtedness, with the right to re-purchase within a year for the amount of that indebtedness, plus interest, taxes and other sums paid. These facts furnish an ample consideration for the deed.

[3] Appellants further contend that the relationship of debtor and creditor continued to exist after the giving of the deed. They point to the fact that, after that instrument had been delivered, the loan society sent them statements of interest due and premiums paid on insurance policies, and that the mortgage was

not released nor the notes surrendered for a long while after the deed was given. These incidents would tend to indicate that the relationship of debtor and creditor continued to exist; but, to our mind, they are very satisfactorily explained. In the first place, the failure to release the mortgage was a mere matter of oversight. Besides, if the transaction was what the loan society claimed it to be, it alone was interested in clearing the record by having the mortgage released, and it would be natural enough for it to overlook the matter of the release until such time as that fact might be brought to its attention. As to the notes, it may be that the appellants were not entitled to them, because they were given, not by the appellants, but by the Fireproof Storage Company. In addition to this situation, it appears that the notes and mortgage had, in the first place, been deposited with the state banking department under certain provisions of our statutes, and they were simply permitted to remain there for some months after the deed was given. The two $1,000 notes, which had been paid long before the deed was given, were not surrendered. No person had demanded their surrender. The mere failure to promptly surrender the notes cannot, in our opinion, possibly overcome the other strong proofs that the indebtedness had been paid by the giving of the deed. The option to re-purchase is, in itself, exceedingly strong proof of that fact, for it assumes that the loan society is the owner of the property and that the appellants may, at their option, become purchasers. There is not a word in the option to indicate that the relationship of debtor and creditor continues to exist, or that the appellants are the true owners of the property.

The fact that the loan society sent appellants statements of interest and insurance premiums and requested payment is unimportant, when the explana-

tion therefor is considered. The loan society's books were not brought down to date. The ledger did not show the deed, it showed only the mortgage. The testimony shows that the loan society did not make its ledger show that it was the owner of the property, because there was still outstanding the option to purchase. Those who sent out these notices of interest and premiums were subordinates, who had no knowledge of the deed transaction and were simply following the ledger, which still indicated that the mortgage was unpaid.

[4] Appellants further contend that the difference in the actual value of the property deeded and the amount of the indebtedness is so great as to show that the deed was intended as a mortgage, and not an absolute transfer of the title. The authorities quite generally hold that, where the disparity between the amount of the indebtedness and the value of the property is so great as to necessarily lead to the conclusion that the deed was intended as security, the courts will, without hesitation, so declare. The appellants cite a number of cases where this court has so held. For illustration, in the case of *Collins v. Denny Clay Co.*, 41 Wash. 136, 82 Pac. 1012, the indebtedness was less than $8,000, and the value of the property conveyed was in excess of $20,000. In the case of *Hoover v. Bouffleur*, 74 Wash. 382, 133 Pac. 602, property worth $4,000, but subject to a $2,000 mortgage, was deeded in consideration of $250. In *Beverly v. Davis*, 79 Wash. 537, 140 Pac. 696, a somewhat similar condition existed. In each of these cases, we held that the disparity was so great as to overcome all presumptions that the deed was what it purported on its face to be. But such is not the situation here. It is true that the appellants testified that the property was worth about $100,000 and some of

their witnesses testified that it was worth in the neighborhood of $75,000; but, on the other hand, there was testimony, upon which the trial court greatly relied, to the effect that the mortgaged property was worth but a little more than the mortgage indebtedness. The trial court, who knew, of course, much more about the value than we can know, said that he believed the property was worth approximately $40,000 at the time the deed was given. The testimony further showed that the appellants, before giving the deed, tried to sell the property for $60,000 and were unable so to do. There was testimony to the effect that this property was not well located for warehouse purposes, that it had been vacant for a considerable time, that it was very much out of repair, and that property of that character in the city of Spokane had, during recent years, very considerably decreased in value. Under these circumstances, we cannot say that the property was actually worth, or could have been sold in the market for very materially more than, the indebtedness against it.

[5]  In this connection, appellants contend that the loan society is estopped to claim that the property is worth less than $70,000, that amount being double the amount of its loan. This argument is based on a state statute prohibiting a corporation, such as the loan society, from loaning more than fifty per cent of the value of the property which is taken as security. This could not be any estoppel in this dispute, even though the society had knowingly violated the statute. Its sole purpose is to protect the lender. But it must be also remembered that the loan was made several years before the deed was given; that meanwhile the property may have depreciated in value; that it needed repairing; and that the loan society may honestly have been mistaken as to value when it made the loan.

We have not undertaken to discuss every item that the appellants have relied upon, but only such as appeared to us to be of moment. Taking the case as a whole, we are satisfied that, when this deed was made, it was the intention of both parties that the title to the property was to be vested absolutely in the loan society, with the privilege on the part of the appellants to re-purchase.

The judgment is affirmed.

TOLMAN, C. J., FULLERTON, and MACKINTOSH, JJ., concur.