[No. 33797. Department Two. October 18, 1956.]

BILES-COLEMAN LUMBER COMPANY, *Appellant,* v. VICTOR LESAMIZ *et al., Respondents.*[1]

[1] Reported in 302 P. (2d) 198.

*Earl K. Nansen* and *R. E. Mansfield*, for appellant.

*John Hancock, H. A. Davis,* and *Engst & Phelps,* for respondents.

OTT, J.—September 23, 1940, Charles S. Henderson and Alice Henderson, his wife, executed a timber deed to the Biles-Coleman Lumber Company, hereinafter referred to as the company.

May 17, 1955, the company commenced this action to reform its timber deed from the Hendersons to include an additional 560 acres, alleging that, by mutual mistake, the acreage had not been included in the deed. It sought also to enjoin the defendants Victor Lesamiz and wife, subsequent purchasers from the Hendersons of the disputed 560-acre tract, from removing the timber thereon. The Hendersons were not joined as parties to the action.

The cause was tried to the court, and from a judgment denying reformation and discharging the injunction, the company has appealed.

Victor Lesamiz and wife will be referred to in this opinion as though they were the only parties respondent.

The chain of title to the disputed 560 acres, as evidenced by the county auditor's records, is as follows: September 23, 1940, a deed from the treasurer of Okanogan county to C. S. Henderson; January 16, 1942, a warranty deed from C. S. Henderson and wife to Victor Lesamiz; July 6, 1943, a deed from Victor Lesamiz and wife to Charles S. Henderson and wife, conveying an undivided one-half interest; May 24, 1944, a deed from Alice Henderson, a widow (C. S. Henderson having died in the interim), to Victor Lesamiz and wife, reconveying the undivided one-half interest.

■ It is conceded that the record showed the Hendersons to be the owners of the disputed acreage and the timber rights thereon at the time they conveyed the land, including the timber rights, to the respondents, and that the prior deed from the Hendersons to the company did not contain the timber rights upon the disputed acreage. If, as between the appellant company and C. S. Henderson and wife, there was in fact a mutual mistake, the recorded defective deed did not establish notice of such mistake to a subsequent purchaser. As to such subsequent purchaser the status of the record was tantamount to a failure to record a conveyance.

RCW 65.08.070 [cf. Rem. Rev. Stat., § 10596-2] provides, in part:

"A conveyance of real property . . . may be recorded in the office of the auditor of the county where the property is situated. Such a conveyance not so recorded is void as against any subsequent purchaser . . . in good faith and for a valuable consideration from the same vendor, his heirs, or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded."

■ The statute provides that the failure of a vendee to record an existing deed makes such a deed void as to a subsequent purchaser in good faith from the same vendor. The recorded timber deed from the Hendersons to the company

was such a void deed as to the disputed area, unless the evidence establishes that the respondents were not bona fide purchasers for value.

We have held that a bona fide purchaser for value of real property may rely upon the record chain of title as shown in the office of the county auditor. *Beckman v. Ward*, 174 Wash. 326, 24 P. (2d) 1091 (1933), and cases cited; *Cunningham v. Norwegian Lutheran Church*, 28 Wn. (2d) 953, 956, 184 P. (2d) 834 (1947); *Spokane v. Catholic Bishop of Spokane*, 33 Wn. (2d) 496, 506, 206 P. (2d) 277 (1949).

A bona fide purchaser for value is one (a) who has had no notice of the claim of another's right to or equity in the property prior to his acqustion of title, and (b) who has paid the vendor a valuable consideration. *Peterson v. Paulson*, 24 Wn. (2d) 166, 180, 163 P. (2d) 830 (1945).

The record discloses and the court found that, as to (b), a valuable consideration was paid.

Appellant contends that, as to (a), the respondents had notice of the company's claim to the timber on the land in question prior to their purchase thereof from the Hendersons. The burden of establishing that a purchaser had prior notice of another's claimed right or equity rests upon the one who asserts such prior notice. *Scott v. Farnam*, 55 Wash. 336, 340, 104 Pac. 639 (1909); *Daly v. Rizzutto*, 59 Wash. 62, 67, 109 Pac. 276 (1910).

The appellant company relied upon the following evidence to establish notice to respondents of the appellant's prior claim of ownership:

Mrs. C. S. Henderson, one of the grantors of the property to the respondents, testified that, because of the lapse of time, she could recall none of the circumstances of the sale to the respondents in 1942, except that she had signed the deed to the property. Later, she was recalled as a witness and stated that she now recalled that the respondents "understood" that the appellant company owned all of the timber on the land, for the reason that it was discussed with respondents prior to the completion of the transaction.

Appellant's second witness was Dallas Grasty, who was an alleged silent partner of the Hendersons in the original purchase of the property from the county. At the time of the trial, the witness was seriously ill. His testimony was by deposition. The witness experienced great difficulty in comprehending the questions, and it was only after repeated prompting, and with assistance from his wife, that he was able to answer. On several occasions, he stated that some of the timber acquired by the partnership from the county had been held back by himself and the Hendersons in their conveyance to the appellant company. Later in his deposition, he testified that no timber had been held back by the partnership and that all of it was conveyed to appellant company.

As opposed to this testimony, the record contains the testimony of the respondents, who denied that they had any knowledge of the claim of the appellant company to the timber rights on the disputed 560 acres, prior to their purchase of the property or prior to the company's asserting its claim of ownership in December, 1951.

Respondents' testimony was corroborated by the witness Earl Pratt, who stated that he had been asked by Charles Henderson, deceased, to negotiate a sale of the land to respondents; that Mr. Henderson represented to him that there were several hundred acres of timber that went with the property, and that he related these facts to the respondents as an inducement to them to purchase the land.

The trial court found that the appellant company had not established that the respondents had notice or knowledge of the claim of appellant prior to respondents' acquisition of the property in dispute.

Appellant next contends that the conduct of respondents with reference to the payment of taxes, after respondents acquired the property, established that they had knowledge of the claim of the appellant. The land descriptions contained in the timber deed from the Hendersons to the appellant conveyed 2,151.24 acres of timber. The fee title to this acreage, exclusive of the timber rights, remained in the Hen-

dersons. The Hendersons thereafter conveyed to the respondents the fee title to the 2,151.24 acres, plus the 560 acres in dispute and other real property. The Henderson deed to the respondents contained no timber reservation. The respondents, having actual and constructive notice of the prior recorded timber deed, asserted no claim to the 2,151.24 acres of timber rights owned by appellant.

For the years 1942 and 1943, Charles Henderson received tax contribution payments from both the respondents and appellant company. For the year 1944, the appellant company paid to respondents all of the forest fire patrol assessment on the entire 2,711.24 acres, but made no contribution on the real-estate taxes. It was not until December, 1951, when the respondents requested a contribution from appellant for the taxes for the years 1945 to 1951, that respondents learned that appellant company claimed to be the owner of the timber rights on the 560 acres here in question.

The testimony relating to taxes does not establish knowledge on the part of the respondents that, prior to their acquisition of title to the property in dispute, the appellant company claimed any more timber rights than the company's record title disclosed. The record is clear that the appellant, in December, 1951, claimed ownership of the timber rights on the 560 acres in question, and did pay one half of the taxes upon all of the property, including the 560 acres, and that respondents accepted the one-half payment. The record also establishes that the timber rights were worth several times the value of the land, exclusive of the timber. Based upon these values, the contribution made to respondents by appellant of one half of the taxes did not equal appellant's proportionate share of the taxes. The acceptance of one half of the total tax assessment established only that respondents were willing to accept the tendered contribution as full settlement of appellant's tax account.

The court found that appellant's evidence of tax contributions did not establish notice to the respondents of appellant's claim of ownership of the timber rights on the disputed property.

Our reading of the record convinces us that the trial court did not abuse its discretion in entering its several findings herein. Hence, the court's findings will not be disturbed. *State ex rel. Carroll v. Seattle Hotel Building Corp.,* 41 Wn. (2d) 595, 597, 250 P. (2d) 982 (1952); *Brillhardt v. Ben Tipp, Inc.,* 48 Wn. (2d) 722, 724, 297 P. (2d) 232 (1956).

Since respondents are subsequent bona fide purchasers for value, without prior notice of the claim of ownership of the appellant, there can be no reformation of appellant's deed to include the disputed area. *Seward v. Spurgeon,* 9 Wash. 74, 37 Pac. 303 (1894); *Billings v. Billings,* 156 Wash. 505, 287 Pac. 46 (1930); 76 C. J. S. 409, § 59.

The judgment of the trial court is affirmed.

DONWORTH, C. J., MALLERY, HILL, and WEAVER, JJ., concur.