[No. 5749–1.   Division One.   April 16, 1979.]

LESLIE F. PARKER, ET AL, *Respondents,* v. SPEEDY
RE–FINANCE, LTD., ET AL, *Appellants.*

ANDERSEN, J., concurs by separate opinion.

*Stafford, Frey & Mertel* and *John G. Cooper,* for appellants (counsel for appeal only).

*William L. Williams,* for respondents.

DORE, J.—Defendants appeal the trial court's judgment quieting title in plaintiffs in two parcels of land.

## ISSUES

1. Whether the trial court erred in quieting title in plaintiffs upon finding deeds, conveying title to two parcels of land owned by plaintiffs, were mortgages.

2. Where an owner of land claiming to be a bona fide purchaser for value has his title challenged, does he have the burden of proving he paid consideration for the same, or does the party challenging the bona fideness of his title have the burden of proving lack of consideration?

## FACTS

In 1970 the plaintiffs were owners of two parcels of undeveloped land near Blaine, Washington, consisting of 45 and 40 acres of land respectively. At that time plaintiffs were contacted by a man named Kalbfleisch. He was a typical con man representing himself to be the chief executive officer of a company known as Enterprises 70's, Inc. He advised that his company was in need of cash for its developments and made a proposition appealing to the greed of the Parkers. He proposed that if the Parkers would put up their 85 acres as collateral for a $10,000 loan, his company would pay them $5,000 plus aid them in the development of their property. He represented that in order to show his

good faith, he would transfer two properties he owned to the Parkers for security.

Subsequently the Parkers were visited by J. Richard Deal, a representative of Enterprises 70's, Inc. He presented a two–page written document to the Parkers which more or less represented the agreement Kalbfleisch had arrived at with the Parkers. This agreement was signed by both Parkers as well as Deal, for Enterprises 70's, Inc. The pertinent paragraph of that agreement was:

> This committment [sic] on the part of ENTERPRISES 70's, INC., is based upon an agreement that the properties of Mr. Leslie F. Parker and Bernice J. Parker, his wife, as here described: Subdivision Bay View Place (all of it) as recorded in Book Two of Plats, Page 100, records of Whatcom County, Washington; the East 40 acres of the West 80 acres of the Southeast Quarter of Section 34, Township 41 North, Range One East of W.M., will be used as collateral to secure a $15,000.00 loan at nine (9) percent per annum. Upon completion of said loan, $5,000.00 will be given to Mr. and Mrs. Parker and $10,000.00 will be given to ENTERPRISES 70's, INC. The $10,000.00, plus interest at nine (9) percent per annum, will be paid to Mr. and Mrs. Parker as heretofore stated in this agreement and is to be paid by ENTERPRISES 70's, INC., within thirty (30) days after completion of said loan transaction. *Full payment of the $15,000 plus interest will be made by ENTERPRISES 70's, INC. to Mortgagor.*

(Italics ours.) The italicized sentence above was written in by hand at the insistence of the Parkers and was initialed by the parties. On September 10, 1970, Kalbfleisch signed another agreement with the Parkers captioned "Agreement Between Herbert L. Kalbfleisch and Leslie F. Parker and Bernice J. Parker." Such agreement starts out being a conveyance of various properties to the Parkers but ends up with the statement

> Said titles and deeds to remain the property of Mr. and Mrs. Parker until two (2) properties assigned by Mr. and Mrs. Parker to Enterprises 70's, Inc. have been returned free of encumbrances to their care and keep.

This agreement was signed by Herbert L. Kalbfleisch and the Parkers. It was later established that Kalbfleisch did not own any of the properties that were later conveyed to the Parkers as security.

Subsequently representatives of Enterprises 70's, Inc., presented the Parkers with an earnest money agreement and a statutory warranty deed which reflected a sale from the Parkers to Speedy Re–Finance, Ltd., for the amount of $10,000. The Parkers testified that they were unfamiliar with legal matters and thought this was merely a method wherein they could pledge their properties to secure the loan for Enterprises 70's, Inc. They testified they felt fully protected as they had the signed written agreement with Enterprises 70's which set forth in writing that this was to be a loan. In addition, they had secured what they thought were two parcels of land owned by Enterprises 70's, Inc., as collateral for the temporary conveyance of their land.

Speedy Re–Finance, Ltd., was a Canadian corporation whose sole owner and chief executive officer was the defendant Isac Feldstein. It is undisputed that Feldstein brought into the escrow company in Bellingham written instructions as to how to close the transaction. The escrow instructions provided for the payment of $10,000 to the Parkers upon sale of the Parkers' 85 acres to Speedy Re–Finance, Ltd. Feldstein arranged for the $10,000 claimed purchase price to be wired to the Bellingham National Bank. Feldstein endorsed the $10,000 check over to the Bellingham Title Company. Subsequently the Bellingham Title Company received a phone call from their Seattle office directing them to remit the $10,000 proceeds to a bank account in the name of Enterprises 70's, Inc. The transaction in a nutshell resulted in the Parkers giving warranty deeds to 85 acres of their land to Speedy Re–Finance, Ltd., who they had never heard of prior to the transaction, and remitting the proceeds of the alleged sale to Enterprises 70's, Inc.

Apparently as part of the same transaction Isac Feldstein, upon receiving the warranty deed to the Parkers'

property, conveyed back to Enterprises 70's, Inc., an option to repurchase the property for $13,500, no later than September 15, 1971.

Approximately 9 months later on June 1, 1971, Speedy Re–Finance, Ltd., conveyed the Parkers' 45–acre parcel to Speedy Mortgages, Ltd., also a Canadian corporation. On the same date Speedy Re–Finance, Ltd., conveyed by warranty deed the 40–acre Parker tract to Feldstein's son and daughter, Sidney and Sandra Feldstein. Later, on October 4, 1972, the parcel that Speedy Re–Finance, Ltd., had conveyed to Speedy Mortgages, Ltd., was reconveyed to Speedy Re–Finance, Ltd.

The plaintiffs left the state of Washington and sought employment in Alaska and returned several years later. When they sought to contact Kalbfleisch and the principals of Enterprises 70's, Inc., they found that they had long since fled the area. Plaintiffs then brought this action against the defendants to have title to their 85 acres quieted in them on the basis that the conveying instruments to Speedy Re–Finance, Ltd., although captioned deeds, were in fact mortgages. They further contended they didn't sell their property but merely conveyed it away for loan purposes. The defendants, Speedy Re–Finance, Ltd., Isac Feldstein, Sidney Feldstein and Sandra Feldstein defend, claiming they are bona fide purchasers for value. Kalbfleisch and Enterprises 70's, Inc., were not joined as defendants. At trial Isac Feldstein testified that his son and daughter paid $5,000 for the 40–acre tract conveyed to them from Speedy Re–Finance, Ltd.

## DECISION

ISSUE 1: Parker deeds to Speedy Re–Finance, Ltd., are mortgages.

The trial judge had little difficulty in finding a security transaction between the Parkers and Speedy Re–Finance, Ltd., and in holding that the Parker deeds were mortgages. The court rejected the contention of the defendants that they were bona fide purchasers for value. In his opinion he

described Kalbfleisch as a "scoundrel and crook" and made it clear he believed little, if anything, that Isac Feldstein testified to.

The court made the following pertinent findings of fact to support his judgment.

Finding of fact No. 4:

> On September 15, 1970 the plaintiffs Leslie F. Parker and Bernice J. Parker, his wife, executed a document entitled Statutory Warranty Deed in favor of Speedy Re-Finance, Ltd., which instrument purported to convey an interest in and to the real property in Whatcom County, Washington hereinabove described. Said instrument was filed with the Auditor of Whatcom County, Washington on September 16, 1970 as File No. 1082168. A true and correct copy of that instrument was offered and admitted into evidence in this cause as Exhibit No. 4.

Finding of fact No. 5:

> The plaintiffs executed the deed (Exhibit No. 4) as the result of certain conversations and transactions between themselves and one Herbert Kalbfleisch, who purported to represent the company known as Enterprise 70's, Inc., and were told and believed that they were offering their property as security for a loan to Enterprise 70's. At no time did they intend otherwise.

Finding of fact No. 6:

> The defendant Speedy Re-Finance, Ltd. intended to make a loan to Enterprise 70's. Arrangements for the loan were made between the said Herbert Kalbfleisch and Isac Feldstein, the President and principal owner of the defendant Speedy Re-Finance, Ltd. Both were knowledgeable in the manipulation of instruments in finances, and both intended that a loan was to be made from Speedy Re-Finance, Ltd. to Enterprise 70's on September 15, 1970. Neither Isac Feldstein nor Speedy Re-Finance, Ltd. intended to purchase the property at that time.

Finding of fact No. 7:

> The statutory Warranty Deed (Exhibit No. 4) was prepared at the instance and request of Enterprise 70's, who was acting as agents for Speedy Re-Finance, Ltd. in preparing that document and in dealing with plaintiffs

Leslie F. Parker and Bernice J. Parker. The instrument was prepared under the title of "Statutory Warranty Deed" for the purpose of affording Speedy Re–Finance, Ltd. greater protection than it would have under a document properly entitled as a security instrument, and for the purpose of avoiding statutes which place legal limitations on the amounts of interest that may be legally charged.

Finding of fact No. 8:

There was no monetary consideration that flowed to the plaintiffs, Leslie F. Parker and Bernice J. Parker, as a result of the aforementioned loan transaction. The sum of $10,000.00 was transferred from Speedy Re–Finance, Ltd. to Enterprise 70's. No other funds were involved in this transaction. The fair market value of the real estate which was offered by the plaintiffs as security was substantially in excess of that sum.

### APPLICABLE LAW

For a deed, absolute on its face, to be deemed a mortgage, the person asserting the deed to be other than what it purports to be must show by clear, cogent and convincing evidence that it was the intent of both parties that a mortgage be created. *Allen v. Graaf,* 179 Wash. 431, 38 P.2d 236 (1934); *Washington Safe Deposit & Trust Co. v. Lietzow,* 59 Wash. 281, 109 P. 1021 (1910). All surrounding circumstances may be inquired into in determining intent. *Pittwood v. Spokane Sav. & Loan Soc'y,* 141 Wash. 229, 251 P. 283 (1926).

In *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973), our Supreme Court set forth the test that we must observe in those cases which must be proved by clear, cogent and convincing evidence. The court stated at page 739:

We are firmly committed to the rule that a trial court's findings of fact will not be disturbed on appeal if they are supported by "substantial evidence". *Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972). Nevertheless, evidence that may be sufficiently "substantial" to support an ultimate fact in issue based upon a "preponderance of the evidence" may not be sufficient to support an ultimate fact in issue, proof of which must be established by

clear, cogent and convincing evidence. *See In re Estate of Reilly,* 78 Wn.2d 623, 640, 479 P.2d 1 (1970). Thus, the question to be resolved is not merely whether there is "substantial evidence" to support the trial court's ultimate determination of the factual issue but whether there is "substantial evidence" to support such findings in light of the "highly probable" test.

(Footnote omitted.)

Therefore, in the subject case we must examine the record to determine whether there is highly probable evidence to support the trial court's findings.

The following events show highly probable evidence that the transaction wherein Parkers conveyed their property by warranty deed was intended to be a mortgage for security.

(1) Exhibit No. 1 signed by the Parkers and J. Richard Deal, legal representative of Enterprises 70's, Inc., spells out the entire transaction to be a loan, and that the Parker acreage would be put up as collateral to secure the borrowing of some $15,000. The agreement itself says that the property shall be used as collateral.

(2) Exhibit No. 3, designated "Agreement Between Herbert L. Kalbfleisch and Leslie F. Parker and Bernice J. Parker, signed by Kalbfleisch and the Parkers. Among other things the agreement provided

Said titles and deeds to remain the property of Mr. and Mrs. Parker until two (2) properties assigned by Mr. and Mrs. Parker to Enterprises 70's, Inc., have been returned free of encumbrances to their care and keep.

(3) The uncontroverted testimony of Mr. and Mrs. Parker that the conveyance of their 85 acres of property was security for a loan and not an outright conveyance.

(4) The uncontroverted testimony of Deal, a representative of Enterprises 70's, Inc. who corroborated the testimony of the Parkers that the conveyance was given as collateral for a loan and not as an outright conveyance.

(5) The release of the $10,000.00 by the Parkers to Enterprises 70's, Inc. which carries out the intent as expressed in the written documents (exhibits Nos. 1 and 2) again illustrates that the transaction was a loan.

(6) The fact that the Parkers received no money whatsoever for the conveyance of their 85 acres. It is unreasonable that the owners of valuable property of which it

was testified to have a value of some $40,000, would be conveyed away for absolutely nothing, which is the defendants' contention.

(7) The option to purchase agreement.

The option to purchase agreement itself spells out the provisions of the loan. Obviously $10,000 was loaned and the option agreement provides that if it was paid back plus $3,500 by March 15, 1971, the property which was given as security, would be given back, or if the borrower waited until September 15, 1971, he would be charged an additional $500 or a total of $4,000 interest on his $10,000 loan. Although the option agreement is dated October 9, 1970, some 3 weeks after the date on the warranty deed, in all probability it was executed simultaneously with the original transaction, for it is highly unlikely that Enterprises 70's, Inc., would agree to give a deed on a piece of property worth $40,000 and only receive $10,000 back unless it simultaneously had in its possession the option agreement to repurchase for a designated amount.

Speedy Re–Finance, Ltd., argues that the property being conveyed in all probability was worth $10,000. This is not supported by the evidence. Mrs. Parker testified unequivocally (and without objection) that the property was worth $40,000. In addition, we have a written document (exhibit 1) providing that the worth of the property would be sufficient to support a $15,000 loan. In rare instances would anyone ever loan up to the full market value of the property. It is, therefore, clear that representatives of both Enterprises 70's, Inc., and the Parkers were of the opinion that the value of the property was far in excess of $15,000. Again, it is unreasonable to believe that one could borrow $15,000 on a piece of property that only has a market value of $10,000.

Isac Feldstein testified that he thought that Kalbfleisch was a real estate agent for the Parkers, yet admittedly he delivered both the earnest money agreement and the escrow instructions to the Bellingham Title Company,

which instruments show on their face that there is no commission to be paid to Enterprises 70's, Inc., or their agents. This is strong proof that he knew there was no sale.

Although the trial court believed little Isac Feldstein testified to, his testimony in reference to how he came down from Canada is evidentiary that his finance company was making a loan to Enterprises 70's, Inc., rather than purchasing property. A purchaser of farmland ordinarily has need to seek out the sellers to find out the borders or dimensions of the land being sold and what type of terrain the property is, and whether such property is suitable for planting or whether it is marsh or wastelands. Such a purchaser would be most interested in talking to the sellers and asking what type of use the property had been put to in the past and also what crops, if any, had been grown, together with the market value of the crops that were harvested. Feldstein's testimony that he drove by the property but did not know exactly where it was and didn't bother to have it surveyed or talk with the owners is likewise consistent with the transaction being a loan.

█ Speedy Re–Finance, Ltd., argues that no mortgage could exist in the instant case since no evidence was presented to establish the existence of a debtor/creditor relationship between the Parkers and Speedy Re–Finance, Ltd. We find this argument to be without merit. It is true that the creation and existence of a mortgage depend upon the existence of a debt capable of enforcement by action and intended to be secured by a mortgage. *John R. O'Reilly, Inc. v. Tillman,* 111 Wash. 594, 599, 191 P. 866 (1920); 9 G. Thompson, *Commentaries on the Modern Law of Real Property* § 4736, at 344–48 (1958). It is also true that one of the circumstances to be used in determining whether a deed was intended as a mortgage is whether the relationship of debtor and creditor continues to exist. *Pittwood v. Spokane Sav. & Loan Soc'y,* 141 Wash. 229, 234, 251 P. 283 (1926). However, it cannot be stated that there must be an identity of relation between the mortgagor–mortgagee and

the debtor–creditor in all cases. A mortgage may be executed to secure the contemplated obligations of a third person even though the grantor assumes no personal responsibility for the payment of the third party's debt. *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.,* 95 Idaho 599, 514 P.2d 594, 598 (1973); *State Bank v. Criswell,* 155 Kan. 314, 124 P.2d 500, 503 (1942); 9 G. Thompson, *supra* § 4764, at 439–41; 55 Am. Jur. 2d *Mortgages* §§ 146–47 (1971).

We conclude that the record shows "highly probable" and substantial evidence to support the trial court's findings that the deed to the 45–acre tract from Parkers to Speedy Re–Finance, Ltd., was a mortgage.

ISSUE 2: Sidney Feldstein and Sandra Feldstein are not bona fide purchasers for value of the 40 acres conveyed by the Parkers.

In *Biles–Coleman Lumber Co. v. Lesamiz,* 49 Wn.2d 436, 302 P.2d 198 (1956), it is stated at pages 438–39:

RCW 65.08.070 [*cf.* Rem. Rev. Stat., § 10596–2] provides, in part:

"A conveyance of real property . . . may be recorded in the office of the auditor of the county where the property is situated. Such a conveyance not so recorded is void as against any subsequent purchaser . . . in good faith and for a valuable consideration from the same vendor, his heirs, or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded."

The statute provides that the failure of a vendee to record an existing deed makes such a deed void as to a subsequent purchaser in good faith from the same vendor. The recorded timber deed from the Hendersons to the company was such a void deed as to the disputed area, unless the evidence establishes that the respondents were not bona fide purchasers for value.

We have held that a bona fide purchaser for value of real property may rely upon the record chain of title as shown in the office of the county auditor. *Beckman v. Ward,* 174 Wash. 326, 24 P. (2d) 1091 (1933), and cases cited; *Cunningham v. Norwegian Lutheran Church,* 28

Wn. (2d) 953, 956, 184 P. (2d) 834 (1947); *Spokane v. Catholic Bishop of Spokane,* 33 Wn. (2d) 496, 506, 206 P. (2d) 277 (1949).

In *Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960), the court stated:

A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. *Biles–Coleman Lbr. Co. v. Lesamiz,* 49 Wn. (2d) 436, 302 P. (2d) 198; *Peterson v. Paulson,* 24 Wn. (2d) 166, 163 P. (2d) 830.

█ Third parties attacking the validity of a deed have the burden of showing that grantees had notice of the defect in title or should have had knowledge of that fact. However, a bona fide purchaser, in order to raise that defense, must make a showing that he has paid consideration. In the subject case the grantees Sidney Feldstein and Sandra Feldstein, although present in court, refused to testify. The testimony that consideration was paid was testified to only by Isac Feldstein. He alleged that $5,000 had been paid for the 40–acre parcel of land. The trial court disbelieved Feldstein's testimony. The transaction itself was suspicious because of the father–daughter–son relationship plus the fact that Isac Feldstein had shifted the ownership of the Parker property from Speedy Re–Finance, Ltd., to Speedy Mortgages, Ltd., and back again to Speedy Re–Finance, Ltd., all without consideration. Isac Feldstein points to the 1 percent affidavit on the deed to corroborate his testimony that the $5,000 consideration was paid. This is not persuasive, in view of the fact that he also testified that he transferred title to the other Parker parcel (45 acres) by deed from Speedy Re–Finance, Ltd., to Speedy Mortgages, Ltd., and back again to Speedy Re–Finance, Ltd., without consideration even though the instrument itself bore the designation that $50 or 1 percent of the alleged $5,000 consideration was paid.

In *Daly v. Rizzutto,* 59 Wash. 62, 109 P. 276 (1910), our Supreme Court recognized that where there is proof that

the grantee was a purchaser for value and that the title was clear, a prima facie case of bona fideness is made out and the burden is thereafter upon the opposing party to prove the grantee's notice of such an outstanding claim, equity or interest.

> It is not denied that respondents' grantor was a purchaser for value, or that the record title was clear. This raised the presumption that the purchaser was without notice, and put the burden on appellant to prove notice of her equity.
> "Proof of such payment, in the absence of proof of notice, or of any fact sufficient in law to charge notice, or sufficient to put the purchaser upon inquiry, will raise the presumption that his purchase was without notice, and the *onus* will be upon the one asserting an equity in the property to prove notice thereof to such purchaser." *Williams v. Smith,* 128 Ga. 306, 57 S. E. 801.

*Daly v. Rizzutto, supra* at 67.

What *Daly v. Rizzutto, supra,* failed to clearly state is whether the grantee, alleging a bona fide purchaser status, or the opposing party has the burden of proving the purchase was for a valuable consideration. Our research has not uncovered a Washington case precisely deciding this point. However, logic and justice dictate that the grantee, alleging a bona fide purchaser status, has the initial burden of proving payment of a valuable consideration. In such a case the fact to be proved, *i.e.,* that a valuable consideration has been paid, is an affirmative act and if this act was performed it would be a fact peculiarly within the knowledge of the grantee asserting the bona fide purchaser status. To impose upon the other party the burden of proving the negative, *i.e.,* the want or absence of the payment of a valuable consideration, would be illogical and unjust. Upon establishment of the payment of a valuable consideration, the rule of *Daly* would apply and the burden would thereafter shift. *See* 107 A.L.R. 502, 513 (1937), for a compilation of cases in other jurisdictions upholding this principle.

We hold that defendants Sidney Feldstein and Sandra Feldstein were not bona fide purchasers for value of the Parkers' 40–acre tract. We further affirm the trial court's holding that the Parkers' deed to Speedy Re–Finance, Ltd., was a mortgage to secure a loan. We affirm the trial court's judgment quieting title in such 40–acre tract in the Parkers.

### STIPULATION OF PARTIES

The judgment entered by the court provides that the deeds executed by the Parkers to Speedy Re–Finance, Ltd., were mortgages to secure a loan of $10,000. The supplemental verbatim report of proceedings indicates that the parties stipulated that the matter of interest and costs on the mortgage, if any, would be reserved for determination subject to a decision by the state Court of Appeals.

### CONCLUSION

1. Judgment quieting title to the subject parcels in Parkers be affirmed.

2. That this case be remanded to the trial court for determination of the amount of costs and interest, if any, to be allowed to Isac Feldstein in addition to the $10,000 mortgage lien.

3. That when the final amount of the mortgage lien is established, plaintiffs Parker be given 90 days from such determination to pay the same before Isac Feldstein becomes entitled to foreclose his lien.

CALLOW, C.J., concurs.

ANDERSEN, J. (concurring)—Clear, cogent and convincing evidence was presented that the deed by Mr. and Mrs. Parker was in fact a mortgage. The trial court therefore did not err in so finding and in entering judgment accordingly. *Dempsey v. Dempsey*, 61 Wash. 632, 634, 112 P. 755 (1911).

In addition, Sidney and Sandra Feldstein claimed to be bona fide purchasers for value of a part of the subject real property. *See* RCW 65.08.070; *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960). In such situations, the

78

majority of jurisdictions considering the matter have held that the burden of proving that a valuable consideration was paid for the conveyance is on the subsequent purchasers—here Sidney and Sandra Feldstein. 107 A.L.R. 502, 513 (1937); *United States v. Certain Parcels of Land Situate in San Bernardino County,* 85 F. Supp. 986, 999–1001 (S.D. Cal. 1949). That rule is properly applicable here.

Sidney and Sandra Feldstein were represented by counsel at the trial and Sidney Feldstein was personally present at the trial. They did not testify, however, and no checks, receipts or other documentary evidence of any payment by them for the deed were ever offered into evidence. The trial court did not err when it found that they were not bona fide purchasers for value.

It is for these reasons that I concur.

Reconsideration denied August 2, 1979.

Review denied by Supreme Court October 26, 1979.