COUNTY OF KEITH, NEBRASKA, APPELLEE, V. NORMAN K. FULLER ET AL., APPELLEES, ADAMS BANK & TRUST, APPELLANT.
452 N.W.2d 25

Filed February 23, 1990.    No. 88-300.

Neil E. Williams and Tanya L. Dillow, of McGinley, Lane, Mueller, O'Donnell & Williams, P.C., for appellant.

Firmin Q. Feltz for appellee Santero.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Adams Bank & Trust (Adams Bank) appeals a foreclosure decree wherein the Keith County District Court held that Barbara L. Santero's marriage dissolution judgment lien was viable and had priority over two mortgages wherein the bank was the mortgagee. We affirm.

On appeal, Adams Bank claims the trial court erred in failing to find that (1) Santero's judgment lien merged with the fee title to the real estate involved here, (2) it was inequitable for Santero to attempt to enforce her judgment lien after the bank had executed a release in her favor, (3) a 1973 mortgage in its favor is a valid lien against the property here involved, and (4) a 1984 note in the favor of the bank was secured by mortgages executed and delivered to the bank in 1974 and 1977.

An action to foreclose a lien is grounded in equity. *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 749, 448 N.W.2d 123 (1989). In an appeal of an equity action, this court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, when credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

On June 28, 1973, Barbara L. Fuller, now known as Barbara L. Santero, and her then husband, Norman K. Fuller, executed

and delivered their $100,000 real estate mortgage to Keith County Bank & Trust Company, which later merged with Adams Bank & Trust. The mortgage described:

> All of Block Forty-two (42), Aufdengarten's First Addition to Ogallala, Keith County, Nebraska, and that part of the land included within the exterior boundaries thereof which was dedicated to the public use as an alleyway in the original Dedication of Aufdengarten's First Addition to Ogallala, Nebraska, except a tract of land located in the North Half of said Block 42 described as follows: Commencing at the Northwest corner of said Block 42; thence running easterly along the North line of said Block, a distance of 250.0 feet; thence Southerly along the East line of said Block 42, a distance of 2.2 feet; thence Southwesterly along an 11,419.2' radius curve to the left, a distance of 250.3 feet; thence northerly along the West line of said Block, a distance of 9.1 feet to the point of beginning and containing 0.032 acres, more or less.

On February 4, 1974, and March 1, 1977, Barbara and Norman Fuller and Fuller Co., Inc., executed and delivered Small Business Administration promissory notes and mortgages to Keith County Bank. The 1974 note and mortgage were for $100,000, and the 1977 note and mortgage were for $30,000. The mortgages were promptly recorded after they were delivered. The two mortgages described:

> All of Block Forty-two (42), Aufdengarten's First Addition to Ogallala, Keith County, Nebraska, and that part of the land included within the exterior boundaries thereof which was dedicated to the public use as an alleyway in the original Dedication of Aufdengarten's First Addition to Ogallala, Nebraska, except a tract of land located in the NorthHalf of said Block 42 described as follows: Commencing at the Northwest corner of said Block 42; thence running easterly along the North line of said Block, a distance of 250.0 feet; thence Southerly along the East line of said Block 42, a distance of 2.2 feet; thence Southwesterly along an 11,419.2' radius curve to the left, a distance of 250.3 feet; thence northerly along

the West line of said Block, a distance of 9.1 feet to the point of beginning and containing 0.032 acres, more or less, also except lots five (5) and six (6) in said Block 42, Aufdengarten's First Addition to Ogallala, Keith County, Nebraska.

Barbara and Norman Fuller, beginning in 1972, had held Block 42, Aufdengarten's First Addition, as joint tenants with rights of survivorship and not as tenants in common. In 1974, 1976, and 1978, Barbara Fuller signed a number of personal guaranties in favor of Keith County Bank for Fuller Co. Leasing, Inc.; Fuller Co., Inc.; and Norman Fuller.

On December 7, 1979, the district court for Keith County entered a decree dissolving the marriage of Barbara and Norman Fuller. The court ordered Norman Fuller to pay Barbara Fuller the sum of $149,834.16 in accordance with a property settlement agreement, which was incorporated by reference into the dissolution decree. By joint stipulation dated December 10, 1981, this amount was increased to $164,002.66. On December 7, 1979, in consideration of $1 and the property settlement agreement, Barbara Fuller conveyed by quitclaim deed to Norman Fuller the real estate described in the 1974 and 1977 mortgages.

Under the property settlement agreement, Norman Fuller agreed to attempt to secure the removal of Barbara Fuller as signatory and/or guarantor on all promissory notes, mortgages, and loans which Barbara Fuller had signed or guaranteed. On April 11, 1980, a partial release was obtained by which Keith County Bank, except for any SBA loans existing on December 7, 1979, discharged Barbara Fuller from liability in connection with all promissory notes and personal guaranties which she had executed in favor of the bank.

Thereafter, on June 3, 1980, Norman Fuller executed and delivered a mortgage on the real estate described in the 1974 and 1977 mortgages to Keith County Bank to secure an indebtedness of $100,000. The mortgage was recorded on June 5, 1980. On December 4, 1984, Norman Fuller, as president of Fuller Co., Inc., executed and delivered to Keith County Bank a promissory note for sums not exceeding a maximum principal amount at any time outstanding of $200,000.

Due to delinquent real estate taxes, Keith County became the owner and holder of a tax sale certificate describing the following real estate:

> Lots 1, 2, 3, 4, 7, 8, 9, and 10, Block 42 of Aufdengarten's First Addition to Ogallala, Keith County, Nebraska, and that part of the land included within the exterior boundaries thereof which was dedicated to the public use as an alley way in the original dedication of Aufdengarten's First Addition to Ogallala, Nebraska, except that portion thereof conveyed to the State of Nebraska, by a warranty deed recorded in book 5, of deeds, page 639 of the records of Keith County, Nebraska and except that portion thereof conveyed to the City of Ogallala, Nebraska by deeds recorded in book 14 of the deeds, page 555 and 556 of the records of Keith County, Nebraska . . . .

On June 19, 1986, Keith County filed an action to foreclose the tax sale certificate. In its second amended cross-petition, Adams Bank, which had merged with Keith County Bank, sought to foreclose its four mortgages and asked the trial court to establish that its mortgages were first in priority. Barbara Santero filed an amended answer and cross-petitioned for foreclosure of her dissolution judgment lien. The parties stipulated that Keith County's tax lien had first priority on the proceeds of the foreclosure sale.

The evidence shows that at time of trial Norman Fuller owed to Adams Bank, including interest, $26,311.99 on the 1974 note, $9,414.53 on the 1977 note, and $52,663.64 on the 1984 note. The record also reflects that under the dissolution decree, as modified, Norman Fuller owed to Santero at the time of the foreclosure decree $89,043.50 and that $37,730 was due Keith County for real estate taxes involved in the tax foreclosure.

The foreclosure decree canceled the 1973 mortgage because there was no evidence of a note or debt securing the mortgage. The court found that Keith County's tax lien had first priority and that Adams Bank's 1974 and 1977 mortgages had second and third priorities, respectively. Santero's judgment lien was given fourth priority. The last priority was assigned to the bank's 1980 mortgage which secured the 1984 note. Along with

setting priorities, the decree reflects the amounts owed by Norman Fuller to the respective parties. No issue has been raised regarding those amounts.

Central to the resolution of this appeal is whether Santero possessed an enforceable judgment lien. Recognizing this, the bank initially argues that Santero's judgment lien was extinguished by merger. The bank first claims that at the time of the entry of the dissolution of marriage decree, Santero's judgment lien immediately attached to the real estate. The appellant further argues that at that time, Santero still possessed her interest in the fee title to the subject real estate. Relying upon Neb. Rev. Stat. § 76-274 (Reissue 1986), the bank concludes that Santero's judgment lien merged with the fee title to the real estate and that when Santero executed and delivered her quitclaim deed to Norman Fuller, the lien was released by reason of merger of the lien. Section 76-274 provides:

> Whenever an interest in the fee title to any real estate in this state and an interest in a mortgage or other lien affecting the same interest shall become vested in the same person, and such person subsequently conveys such fee title by deed, unless a contrary intent is expressed by the terms of such deed, it shall be conclusively presumed in favor of subsequent purchasers and encumbrancers for value and without notice, that such lien interest merged with the fee and was conveyed by such deed and that such lien was thereby released from fee interest so conveyed.

In *Gilcrist v. Wright*, 167 Neb. 767, 94 N.W.2d 476 (1959), William Ehlers was assigned a $5,000 mortgage. Later, the same property to which the mortgage applied was conveyed to Ehlers and his wife as joint tenants. This court held that a mortgage does not merge in the fee title when there is no identity of ownership of the mortgage and the fee title. In this case, Santero's judgment lien attached to the entire property, yet her interest in the fee title was only that of a joint tenant. Therefore, there was no identity of ownership of the lien and fee title. Consequently, no merger took place. Appellant's first assignment of error is without merit.

In its second assignment of error, Adams Bank claims that it is inequitable for Santero to attempt to enforce her judgment

lien after the bank had executed and delivered a release in her favor.

In 1984, at the time the Adams Bank granted a loan to Norman Fuller, the bank had intimate knowledge of the circumstances surrounding the ownership of and the encumbrances on the real estate involved in this action. The bank had previously taken mortgages on the property as security. After the Fullers' marriage was dissolved, pursuant to Fullers' property settlement agreement, there were negotiations for at least 4 months with Keith County Bank's agent to secure a release for Santero from her guaranties. Accordingly, the bank had notice of the Fullers' dissolved marriage, their property settlement agreement, and, inferentially, Santero's judgment lien and the lack of identity between the ownership of the judgment lien and fee title. Despite this knowledge, the bank loaned additional money to Norman Fuller in 1984. Adams Bank claims that had it known that Santero would attempt to enforce her judgment lien against the foreclosed property, it is doubtful it would have loaned money to Norman Fuller in 1984.

The short answer to this is that the release was independent of the judgment lien. Santero testified, and the bank agrees in its brief, that the release was in exchange for Santero's executing a quitclaim deed to Norman Fuller for her interest in the real estate involved in the foreclosure. There is no credible evidence that the bank's release was in consideration for Santero's relinquishing her judgment lien. Under the circumstances, there is nothing inequitable regarding the result. Appellant's second assignment of error is meritless.

The 1974 and 1977 notes provided that collateral "shall mean any . . . property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof."

Adams Bank claims in its third assignment of error that under these provisions, the 1973 mortgage falls within the definition of "collateral." Under the bank's reasoning, there would then be a note to evidence the 1973 mortgage.

It has long been the rule in this state that a mortgage is a mere security and has no efficacy if unaccompanied by a debt or obligation. See *Columbus Land, Loan & Bldg. Assn. v. Wolken*, 146 Neb. 684, 21 N.W.2d 418 (1946). There must be an agreement, either express or implied, on the part of the mortgagor, or someone in whose behalf the mortgage is executed, to pay to the mortgagee a sum of money either on account of a preexisting debt or present loan. *Id*. Although money need not be loaned at the time the mortgage is given, there must still be an obligation at the time the mortgage is executed for future advances of funds. See, e.g., *Larson Cement Stone Co. v. Redlim Realty Co.*, 179 Neb. 134, 137 N.W.2d 241 (1965); *Creigh Sons & Co. v. Jones*, 103 Neb. 706, 173 N.W. 687 (1905). It has further been held that mortgage clauses, known as dragnet clauses, which undertake to secure subsequent debts will, in the absence of other legal prohibition, be enforced to the extent they are determined to have been within the intent of the parties. *O'Neill Production Credit Assn. v. Mitchell*, 209 Neb. 206, 307 N.W.2d 115 (1981).

This is not a case where a note is executed contemporaneously with a mortgage to secure future advances. Nor is this a case with a dragnet clause in a mortgage. Instead, the case falls squarely within the rule declared in *Wolken, supra*. The mortgage executed in 1973 indicates that there was to be an accompanying promissory note bearing even date. However, there was no such note in evidence, nor does the record reflect that any loans were made before or in connection with the 1973 mortgage. A branch president employed by Adams Bank testified that the 1973, 1974, and 1977 mortgages secured the notes executed in 1974 and 1977. Thus, there was no obligation flowing from Keith County Bank to the Fullers when the mortgage was executed in 1973. Moreover, the evidence demonstrates that the mortgages given in 1974 and 1977 were the collateral for the notes executed with those mortgages. Appellant's assignment of error is without merit.

Under the terms of the 1974 and 1977 notes, indebtedness was defined as "the indebtedness evidenced by this Note . . . whether heretofore or contemporaneously herewith or hereafter contracted." In its final assignment of error, the bank

contends that because the term "indebtedness" included indebtedness "hereafter contracted," the provision included the indebtedness contracted for on December 4, 1984. The bank seeks to have the 1984 note brought under the earlier notes' provisions so that the 1984 note is secured by the 1974 and 1977 mortgages, which were given priorities ahead of Santero's judgment lien.

In effect, the bank argues that either or both of the 1974 and 1977 mortgages secured future advances. As indicated, a mortgage may be made to secure future advances. *Larson Cement Stone Co., supra*; *O'Neill Production Credit Assn., supra*. Neither the mortgages nor other documents in the record indicate that future advances were to be secured by the mortgages. The rules governing interpretation of contracts are applicable to mortgages. See *Erickson v. Newell*, 183 Neb. 641, 163 N.W.2d 286 (1968). The terms of an instrument are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Crowley v. McCoy, ante* p. 88, 449 N.W.2d 221 (1989). Here, the 1977 mortgage states that it was given to secure the payment of a promissory note dated March 1, 1977, in the amount of $30,000. The 1974 mortgage likewise indicates that it was given to secure the note executed on the same day as the mortgage. The notes executed on the same days as the mortgages are in the same amounts as the mortgages.

There is another reason for rejecting the bank's argument. In *O'Neill Production Credit Assn., supra*, a husband and wife and the husband's parents assigned their interest in an executory land contract to a lender. An assignment of the executory land contract was treated as a mortgage by the court. The assignment contained a provision that it secured any indebtedness thereafter incurred. After the assignment was executed, the lender loaned money solely to the husband on one occasion and to the husband and wife on another occasion. The court held that with regard to the subsequent loan to the husband in which the wife was not a party, the assignment created no lien against the wife's interests in the property. In this case, the 1984 note was signed solely by Norman Fuller, as president of Fuller Co., Inc. As in *O'Neill Production Credit*

*Assn., supra,* since Santero did not jointly execute the 1984 note, the bank could not possess a lien against her interest in the property by virtue of the 1984 note. Therefore, it is concluded that the notes executed in 1974 and 1977 did not include the indebtedness incurred in 1984.

AFFIRMED.

SHANAHAN, J., not participating.