CACHE NATIONAL BANK, a National
Banking Association, Petitioner,

v.

Marjorie LUSHER, Respondent.

No. 93SC334.

Supreme Court of Colorado,
En Banc.

Oct. 17, 1994.

Karowsky, Witwer, Miller & Oldenburg,
John J. Barry, Greeley, for petitioner.

Robert C. Burroughs, Ault, for respondent.

Justice LOHR delivered the Opinion of the
Court.

In an action brought by Cache National
Bank (CNB) against Marjorie Lusher to
quiet title to an undivided one-half interest in
certain real property, the Colorado Court of
Appeals reversed the trial court's entry of
summary judgment in favor of CNB and
directed entry of judgment in favor of Lusher. *Cache Nat'l Bank v. Lusher*, No.
92CA0077 (Colo.App. March 18, 1993) (not
selected for official publication). Lusher asserted title through foreclosure of a deed of
trust senior to the deed of trust that was the

source of CNB's claim. The Lusher deed of trust secured obligations of co-makers of a promissory note. The issue presented for our determination is the effect of the running of the statute of limitations as to the personal liability of one co-maker of that promissory note on the validity of the lien of the deed of trust on that co-maker's undivided one-half interest in the property encumbered by the lien. We hold that because each maker encumbered his or her interest in the property to secure not only his or her own individual obligations on the note but also the obligations of the other co-maker, the lien on the property remained in effect on each co-maker's interest notwithstanding the extinguishment of one co-maker's personal liability on the note. We base this holding on the language of section 38–39–207, 16A C.R.S. (1993), concerning extinguishment of liens, and on the terms of the original promissory note and deed of trust. We therefore affirm the judgment of the court of appeals.

## I.

The pertinent facts are undisputed. We derive them from the findings of the trial court and from copies of original instruments and other materials submitted to the trial court by the parties in support of their motions for summary judgment.

On March 3, 1980, Shirley Watts and her husband, Larry Watts, executed a promissory note payable to Marjorie Lusher, Larry Watts' mother, to evidence a loan. The note represented Shirley Watts' and Larry Watts' joint and several obligations to repay Lusher $60,700 plus interest on or before March 3, 1982. The note was secured by a first deed of trust on real property owned by Shirley Watts and Larry Watts and located at 2518 West 4th Street in Greeley, Colorado (the Greeley property). Lusher recorded the deed of trust (the Lusher deed of trust) in the records of the Weld County Clerk and Recorder on March 3, 1980.

On October 7, 1981, Shirley Watts and Larry Watts executed a second promissory note (the CNB note) in the principal sum of $65,822.64 payable to CNB. This note was also secured by a deed of trust encumbering the Greeley property and was payable on demand. CNB recorded its deed of trust (the CNB deed of trust) in the records of the Weld County Clerk and Recorder on October 15, 1981. The lien of the CNB deed of trust, therefore, was junior to the lien of the Lusher deed of trust. See § 38–35–109(1), 16 C.R.S. (1982 Supp.) (recording act).

On March 3, 1982, the note executed in favor of Lusher became due and payable. Neither Larry Watts nor Shirley Watts made any payment on that note. However, on March 3, 1982, Lusher advanced an additional $23,400 to Larry Watts. Larry Watts alone signed a promissory note dated March 3, 1982, evidencing this additional advance and indicating that the note was an "extension of orrigional [sic] note dated March 3, 1980." The note also indicated that the additional advance was secured by the Lusher deed of trust and that the sum of $118,406.60, consisting of principal and interest, would be due on March 3, 1983.

On September 27, 1982, Shirley Watts executed a quit claim deed conveying to Larry Watts all of her interest in the Greeley property. Larry Watts recorded the quit claim deed in the records of the Weld County Clerk and Recorder a day later. On December 23, 1982, the marriage between Larry Watts and Shirley Watts was terminated by a dissolution of marriage decree.

On March 3, 1983, Larry Watts executed the second in a series of four promissory notes extending his obligation to pay the original indebtedness and evidencing additional borrowings by him from Marjorie Lusher. Each extension note was signed by Larry Watts alone, referred to the original promissory note, and indicated that the additional advances were also secured by the Lusher deed of trust. For example, the fourth extension note stated that the amount of $209,256.57 plus interest would be due on March 3, 1990, and that the note was secured by the Lusher deed of trust. Neither Shirley Watts nor Larry Watts made any payments on the original promissory note or any of the extension notes.

Meanwhile, Shirley Watts and Larry Watts defaulted on the CNB note. On July 12, 1983, CNB obtained a decree of fore-

closure authorizing a sheriff's sale in foreclosure of its deed of trust on the Greeley property. On February 11, 1991, as the result of a sheriff's sale and the expiration of all periods of redemption, CNB received a sheriff's deed to the property and on that same date recorded the deed in the records of the Weld County Clerk and Recorder.[1]

On September 24, 1990, before the issuance of the sheriff's deed in the CNB foreclosure, Lusher initiated proceedings through the public trustee to foreclose the Lusher deed of trust because Larry Watts had failed to pay the fourth extension note when it became due on March 3, 1990. On March 6, 1991, Lusher received a public trustee's deed for the Greeley property through a public trustee's foreclosure sale and immediately recorded the deed in the records of the Weld County Clerk and Recorder.[2]

On February 25, 1991, CNB brought an action in Weld County District Court to quiet title to the undivided one-half interest in the Greeley property formerly owned by Shirley Watts (sometimes referred to as the Shirley Watts interest). CNB alleged that the applicable statute of limitations, section 13–80–103.5, 6A C.R.S. (1987),[3] had run on Lusher's ability to enforce payment by Shirley Watts under the terms of the promissory note executed on March 3, 1980. CNB further alleged that the lien securing Shirley Watts'

obligations under the terms of that promissory note had been extinguished as to the Shirley Watts interest pursuant to section 38–39–207, 16A C.R.S. (1993),[4] prior to the public trustee's foreclosure, with the result that the public trustee's foreclosure initiated by Lusher was ineffective as to the Shirley Watts interest. Therefore, CNB contended that it was the owner and entitled to possession of the undivided one-half interest in the property formerly owned by Shirley Watts.[5]

Lusher and CNB each filed a motion for summary judgment. The trial court entered an order granting CNB's motion and denying Lusher's motion. The trial court noted that the statute of limitations applicable to the enforcement of the March 3, 1980, promissory note is section 13–80–103.5, 6A C.R.S. (1987), which prescribes a six year limitations period for commencing an action to enforce the rights in any instrument evidencing a debt. The trial court ruled that because Shirley Watts never executed any extension, modification, or acknowledgment of her obligation under that note, Lusher's ability to pursue an action against Shirley Watts first became time-barred on March 3, 1988, six years after Shirley Watts' obligation on the original March 3, 1980, promissory note matured. The trial court also found that Larry Watts had not assumed Shirley Watts' personal obligation on the note.[6] The trial court

---

1. In a brief filed with the trial court, CNB states that it first learned of the Lusher deed of trust when it obtained its decree of foreclosure on July 12, 1983. The record does not explain the delay of nearly eight years between the decree of foreclosure and the issuance of the sheriff's deed.

2. *See generally* §§ 38–37–101 to –134, 16A C.R.S. (1982 & 1994 Supp.), concerning deeds of trust, functions of the public trustee, and foreclosure of deeds of trust through public trustee proceedings.

3. § 13–80–103.5, 6A C.R.S. (1987), provides in pertinent part as follows:

   The following actions shall be commenced within six years after the cause of action accrues, and not thereafter:
   a) All actions ... for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt....

4. § 38–39–207, 16A C.R.S. (1993 Supp.), provides as follows:

The lien created by any instrument shall be extinguished, regardless of any other provision in this article to the contrary, at the same time that the right to commence a suit to enforce payment of the indebtedness or performance of the obligation secured by the lien is barred by any statute of limitation of this state.

5. CNB has not challenged the effectiveness of the public trustee's foreclosure proceedings as to the undivided one-half interest in the Greeley property owned by Larry Watts when he executed the Lusher deed of trust. The public trustee's deed was effective to convey that interest to Marjorie Lusher free from any interest of CNB.

6. Pursuant to the dissolution of marriage decree that terminated the marriage between Larry Watts and Shirley Watts, Larry Watts was required to pay the marital debts. Lusher has not asserted that this requirement operated as an assumption by Larry Watts of Shirley Watts' personal obligation on the original promissory note payable to Lusher. We express no opinion on this issue.

then reasoned that according to section 38–39–207, 16A C.R.S. (1993), which provides for extinguishment of a lien when the right to enforce the secured obligations is barred by a statute of limitations, the lien of the Lusher deed of trust on the Shirley Watts interest was extinguished on March 3, 1988. This was because the right to enforce payment by Shirley Watts, a right that was secured by the lien, became time-barred on that date. Accordingly, the trial court ruled that CNB, having received a sheriff's deed in foreclosure of its lien on the Greeley property, had acquired title to the Shirley Watts interest free from any interest of Lusher.

Lusher appealed the trial court's judgment to the Colorado Court of Appeals. The court of appeals reversed and directed that judgment be entered "according an undivided one-half interest in the property to Lusher." The court reasoned as follows:

> Shirley Watts conveyed any interest she held in the property to Larry Watts prior to the running of the statute of limitations on the original note. Subsequently, acting as the property's sole owner, Larry Watts executed yearly renewal notes to Lusher, and the foreclosure through the public trustee was commenced prior to the expiration of the statute of limitations on the renewal notes. As a result, Lusher commenced timely foreclosure on a valid note executed by the sole owner of the property, Larry, and the public trustees [sic] conveyed all interest in the property to Lusher. We see no basis in this procedure to divest Lusher of the property.
>
> The fact that any claim on the original note was time barred does not affect the validity of Lusher's lien as to the entire interest of the only record owner.

*Cache Nat'l Bank v. Lusher*, No. 92CA0077, slip op. at 2–3 (Colo.App., March 18, 1993) (not selected for official publication).

CNB sought and we granted certiorari review to determine "[w]hether the court of appeals erred in holding that when one co-maker of a note, which is secured by real property, transfers the property to the other co-maker, the statute of limitations is measured only by the obligation of the transferee-maker." We agree with the result reached by the court of appeals but arrive at that result by way of a different analysis.

## II.

### A.

It is undisputed that the lien of the Lusher deed of trust was senior to the lien of the CNB deed of trust when those instruments were originally executed and recorded. Therefore, if the lien of the Lusher deed of trust on the Shirley Watts interest remained in effect when that lien was purportedly foreclosed by public trustee's proceedings, the foreclosure terminated CNB's junior interest in the Greeley property.[7] Whether the lien remained effective as to the Shirley Watts interest at that time is dependent upon the construction and application of two statutes of limitations: section 13–80–103.5, 6A C.R.S. (1987), concerning actions for the enforcement of rights in instruments evidencing a debt, and section 38–39–207, 16A C.R.S. (1993), concerning extinguishment of liens given to secure payment of indebtedness or performance of other obligations.

Section 13–80–103.5 provides in pertinent part:

> (1) The following actions shall be commenced within six years after the cause of action accrues, and not thereafter:
>
> (a) All actions ... for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt....

As the trial court determined and the court of appeals acknowledged, Lusher was time-barred on March 3, 1988, from bringing an action against Shirley Watts personally to enforce her obligation to pay the original March 3, 1980, promissory note to Lusher. This is because Lusher's cause of action against Shirley Watts accrued on March 3, 1982, when the promissory note became due, and Shirley Watts never thereafter executed

---

7. As earlier noted, the foreclosure of the Lusher deed of trust terminated CNB's interest in the undivided one-half interest in the Greeley property owned by Larry Watts when he executed the Lusher deed of trust. *See* n. 5, *supra*.

an extension, modification, or other acknowledgment of her original obligation. *See* § 13–80–113, 6A C.R.S. (1987) (concerning effect of acknowledgment or promise as evidence of new or continuing contract sufficient "to take a case out of the operation of the statute of limitations"). The six year period of limitation for bringing an action against Shirley Watts therefore expired on March 3, 1988.[8]

Larry Watts, however, remained personally obligated because of his written promise to pay the original note and further advances as reflected in his March 3, 1985, extension note. *See id.* Thus, the critical question is the effect of the extinguishment of Shirley Watts' personal liability to Lusher upon the lien held by Lusher on the Shirley Watts interest.

To answer this question, we look to the second of the two relevant statutes of limitations, section 38–39–207, which provides:

> The lien created by any instrument shall be extinguished, regardless of any other provision in this article to the contrary, at the same time that the right to commence a suit to enforce payment of the indebtedness or performance of the obligation secured by the lien is barred by any statute of limitations of this state.

Under this statute, we must identify "the indebtedness or . . . obligation secured by the lien" to determine whether a particular lien has been extinguished by the running of a statute of limitations on a secured indebtedness or obligation. In the present case, the issue is whether the lien created by Shirley Watts on her undivided one-half interest in the Greeley property secured only her own individual obligation to pay the note—in which case the lien was extinguished when any action to enforce her obligation became time-barred—or whether that lien secured the continuing obligation of Larry Watts to pay the original note as well.[9]

B.

To resolve the issue of the relevant scope of the obligations secured by the lien created by Shirley Watts, we must determine the parties' intent by examining the operative language of the March 3, 1980, promissory note and deed of trust executed by Larry Watts and Shirley Watts.[10] Several well established principles of construction and interpretation of written instruments guide our analysis. Promissory notes and mortgages or deeds of trust are subject to the principles of interpretation and construction that gov-

8. Under § 13–80–114, 6A C.R.S. (1987), and *Coulter v. Bank of Clear Creek County,* 18 Colo. App. 444, 72 P. 602 (1903), the extension agreements signed by Larry Watts without Shirley Watts' agreement or consent did not operate to extend the statute of limitations as to Shirley Watts' personal obligation to repay the Lusher note. The trial court correctly determined, therefore, that the statute of limitations on Shirley Watts' personal obligation to repay the Lusher note ran on March 3, 1988.

9. The California Supreme Court relied on a statute similar to § 38–39–207 in *Vandall v. Teague,* 142 Cal. 471, 76 P. 35 (1904). In *Vandall,* one of the makers of a promissory note argued that the lienholder's ability to foreclose against her interest in the subject property was barred by the applicable statute of limitations. The court agreed and held that the lien on her interest had been extinguished because the statute of limitations had run on the lienholder's ability to enforce the provisions of the promissory note. *Vandall,* 76 P. at 37. Although the facts of *Vandall* are similar to the case at bar, we decline to adopt the reasoning and holding of *Vandall* here, given the specific language in our applicable

statutes of limitations and the language contained in the instruments executed by the parties.

10. It is noteworthy that personal liability for an obligation is not essential to the validity of a lien securing that obligation. *Gallagher v. Central Indiana Bank, N.A.,* 448 N.E.2d 304, 308 (Ind. App. 1 Dist.1983) (a mortgage can be given on land owned by one individual to secure the debt of another without the mortgagor assuming personal liability for the debt); *see also Citizens Bank & Trust Co. v. Gibson,* 463 N.E.2d 276, 281 (Ind.App. 4 Dist.1984); *Huntingburg Production Credit Ass'n v. Griese,* 456 N.E.2d 448, 452 (Ind. App. 1 Dist., 1983); *State Bank of Downs v. Criswell,* 155 Kan. 314, 124 P.2d 500, 503 (1942); *Parker v. Speedy Re–Finance, Ltd.,* 23 Wash.App. 64, 596 P.2d 1061, 1067 (1979); *Seattle–First Nat'l Bank v. Hart,* 19 Wash.App. 71, 573 P.2d 827, 829 (1978); 55 Am.Jur.2d *Mortgages* § 146 (1971); 9 G. Thompson, *Commentaries on the Modern Law of Real Property,* § 4764 at 439–41 (1958). Therefore, a person such as Shirley Watts can effectively encumber her own property to secure an obligation of another person such as Larry Watts.

ern contracts generally.[11] *Appliances, Inc. v. Yost,* 181 Conn. 207, 435 A.2d 1, 2 (1980) (promissory notes); *Freese Leasing, Inc. v. Union Trust and Sav. Bank, Stanwood,* 253 N.W.2d 921, 924 (Iowa 1977) (mortgages); *Mark Twain Kansas City Bank v. Cates,* 248 Kan. 700, 810 P.2d 1154, 1160–61 (1991) (promissory notes and mortgages); *Carpenter v. Riley,* 234 Kan. 758, 675 P.2d 900, 905 (1984) (promissory notes and mortgages); *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 647 P.2d 1268, 1272 (1982) (promissory notes); *County of Keith v. Fuller,* 234 Neb. 518, 452 N.W.2d 25, 31 (1990) (mortgages); *Ligran, Inc. v. Medlawtel, Inc.,* 86 N.J. 583, 432 A.2d 502, 506 (1981) (promissory notes); *Bank of Ephraim v. Davis,* 559 P.2d 538, 540 (Utah 1977) (mortgages). The primary goal of interpretation is to determine and give effect to the intention of the parties. *Freese Leasing,* 253 N.W.2d at 924; *Mark Twain,* 248 Kan. 700, 810 P.2d at 1161. In determining such intent, the terms of the instruments are to be accorded their plain and ordinary meaning. *County of Keith,* 452 N.W.2d at 31. Where the language of the applicable instruments is clear and unambiguous, it must be given effect in arriving at the parties' intent. *Bonady Apartments, Inc. v. Columbia Banking Fed. Sav. and Loan Ass'n,* 119 Misc.2d 923, 465 N.Y.S.2d 150, 152 (App.Div.1983). Intention is to be determined from an examination of both the mortgage and the promissory note that it secures, not from each one separately. *Mark Twain,* 248 Kan. 700, 810 P.2d at 1161; *Carpenter,* 675 P.2d at 905.

The March 3, 1980, promissory note in question here reflects that the deed of trust was executed to secure the obligations of both Shirley Watts and Larry Watts to make the payments required by that note. The note provided that "Debtors [Shirley Watts and Larry Watts] hereby promise and agree to pay Secured Party [Marjorie Lusher] or order the Total of Payments [$60,700] … due on March 3, 1982." The note also provided that the makers "agree to any extension of time of payment and partial payment before, at or after maturity."[12] It also stated that "[t]o secure payment of the above Total of Payments debtors hereby grant unto Secured Party a security interest in the above-described collateral and the proceeds thereof." The collateral is described as a first deed of trust on the Greeley property. Nothing in the promissory note suggests that the lien of the deed of trust was to be divisible—i.e., that Shirley Watts encumbered her interest in the Greeley property to secure only her obligations on the note and that Larry Watts encumbered his interest to secure only his obligations. Rather, the natural construction of the promissory note is that each maker encumbered her or his interest to secure the payment of all obligations owed by both makers, Shirley Watts and Larry Watts.

The Lusher deed of trust, to which reference is made in the promissory note, also was executed by Shirley Watts and Larry Watts on March 3, 1980, and recites that it was given "TO SECURE to Lender [Lusher] … the repayment of the indebtedness evidenced by Borrower's [Shirley Watts' and Larry Watts'] note dated March 3, 1980 …" as well as performance of the Borrower's covenants and agreements in the deed of trust and payment of certain future advances. Among the covenants is the undertaking by the Borrower to pay "the principal of and interest on the indebtedness evidenced by the Note" as well as any advances secured by the deed of trust. The deed of trust also provides that "[e]xtension of the time for payment … of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liabili-

---

**11.** The deed of trust executed by Shirley Watts and Larry Watts designated the public trustee as trustee. Such a deed of trust is governed by statute and is essentially a mortgage containing a power of sale, which is to be exercised in the manner provided by statute. *See* §§ 38–37–101 to –140, 16A C.R.S. (1982), repealed and reenacted as §§ 38–37–101 to –112 (1990 Supp.), now appearing as further amended at §§ 38–37–101 to –112 (1994 Supp.). *See generally* 1 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 1.6 at 11–13 (3rd ed. 1993).

**12.** Lusher has not contended that this provision affected the running of the statute of limitations on enforcement of Shirley Watts' personal obligation on the promissory note payable to Lusher, and we do not address that issue.

ty of the original Borrower and Borrower's successors in interest." All covenants and agreements of the Borrower were explicitly joint and several.

In interpreting the language of the promissory note and accompanying deed of trust, we are satisfied that Shirley Watts encumbered her interest in the Greeley property to secure not only her own obligations under the promissory note and deed of trust, but the obligations of Larry Watts as well. The entire tenor of the Lusher deed of trust is that the lien created thereby is not divisible but is to remain in effect on all interests in the Greeley property until all obligations of both parties to pay the promissory note and perform the other obligations under the deed of trust have been satisfied or otherwise discharged. As the trial court correctly determined, the personal obligations of Shirley Watts became unenforceable when the six-year limitation period expired. § 13–80–103.5, 6A C.R.S. (1987); *Martinez v. Continental Enters.*, 730 P.2d 308, 312–13 (Colo. 1986). The obligations of Larry Watts continued in effect, however, by reason of a series of extensions to which he agreed.[13] Until those obligations were satisfied or otherwise extinguished, the "repayment of the indebtedness evidenced by Borrower's note dated March 3, 1980," had not occurred and the other obligations secured by the deed of trust had not been discharged. The lien of the deed of trust remained in effect on all interests encumbered thereby to secure such repayment and other obligations. *See Hippard v. Rebhan*, 199 Ill.App. 261, 264 (1916) ("[w]hile a personal payment on a joint and several note by one of two joint debtors without the consent or knowledge of the other will not operate to bind the other so as to authorize a new promise taking the case out of the statute of limitations, still a mortgage given to secure such a note will operate as a

lien on the mortgaged premises so long as the payments of the note may be enforced against either joint debtor and until the debt is extinguished, and it is immaterial that one of the mortgaged tracts belonged to one debtor and the other to the other debtor"). Thus, the continuing validity of Lusher's lien was unaffected by the running of the statute of limitations as to Shirley Watts' personal obligation to pay the indebtedness to Lusher.

## C.

The result we reach today advances the commercial purposes served by a deed of trust. Among these purposes is the creation of assurances that until all obligations secured by a deed of trust have been satisfied or otherwise discharged, the lender will have recourse to the entire encumbered property by foreclosure in the event of default. The provisions of the note and deed of trust in this case effected this purpose by encumbering the interests of each to secure the obligations of both.

## III.

When Shirley Watts signed the note and deed of trust, she encumbered her interest in the Greeley property to secure not only her own individual obligations under the note, but also the obligations of her then-husband, Larry Watts. Larry Watts' debt continued by virtue of the extensions to which he agreed, thus maintaining the ongoing validity of the lien. Although the statute of limitations ran with respect to Shirley Watts' personal obligation to repay the debt to Lusher, this did not affect the continuing validity of the lien given to secure the obligations of Larry Watts as well as her own. Accordingly, we affirm the judgment of the court of appeals reversing the summary judgment en-

---

**13.** The Lusher deed of trust contains a future advances clause providing that "[u]pon request of Borrower, Lender, at Lender's option prior to release of this Deed of Trust, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby." Because the issue is not before us in this appeal, we need not determine whether the lien for the advances obtained by Larry Watts from Marjorie

Lusher and secured by the Lusher deed of trust had priority over the lien of the CNB deed of trust. *See generally Kimmel v. Batty*, 168 Colo. 431, 451 P.2d 751 (1969). It is clear, however, that the original amount borrowed by Larry Watts and Shirley Watts remained unpaid at the time of the public trustee's foreclosure of the Lusher deed of trust and that the Lusher deed of trust was senior to the CNB deed of trust for the purpose of securing repayment of that original amount.

tered by the trial court in favor of CNB and directing entry of judgment for Lusher.

SCOTT, J., dissents.

Justice SCOTT, dissenting:

In *Cache Nat'l Bank v. Lusher*, No. 92CA0077 (Colo.App. March 18, 1993) (not selected for official publication), we granted certiorari to decide "[w]hether the court of appeals erred in holding that when one co-maker of a note, which is secured by real property, transfers the property to the other co-maker, the statute of limitations is measured only by the obligation of the transferee-maker." *See* maj. op. at 955–956. The majority, however, avoids that issue and holds that because Shirley Watts' indebtedness on the promissory note was joint and several with her co-maker, "the natural construction of the promissory note is that each maker encumbered her or his interest to secure the payment of all obligations owed by both makers, Shirley Watts and Larry Watts." Maj. op. at 957. Because the majority's analysis departs from the clear language of the controlling statutes and well-established precedent of this court that has stood for more than a century, I respectfully dissent.

I would have preferred to address the question upon which certiorari was granted. By failing to address that issue, the majority implicitly holds that an agency naturally exists between co-makers of a note such that one co-maker has the power to toll the statute of limitations as to the obligations of the other co-maker, all despite the lack of notice or participation by that other co-maker. In reaching its conclusion, the majority, in effect, chooses not to follow the clear language of limitations statutes adopted by the General Assembly. I am unwilling to engage in such judicial legislating when our statutes are clear and our own precedent is otherwise binding.

## I

The facts in this case are not in dispute. On March 3, 1980, Larry and Shirley Watts, then spouses, executed a promissory note (the Lusher note) and deed of trust on real property in favor of Larry Watts' mother, Marjorie Lusher. On October 7, 1981, Shirley and Larry Watts executed a second note and deed of trust on that same property in favor of Cache National Bank (CNB). On September 28, 1982, Shirley Watts conveyed all of her interest in the Greeley property to Larry Watts; soon afterward, Shirley and Larry Watts were divorced. Notably, although Shirley conveyed all of her interest in the property to her former spouse, Larry did not assume Shirley's obligations on the Lusher note.

The deed of trust securing the note stated that "if [Shirley and Larry Watts'] successor in interest (i.e., Larry Watts) has executed a written assumption agreement accepted in writing by Lender (Lusher), the Lender shall release [both Shirley and Larry Watts] from all obligations under the Deed of Trust and the Note." Larry Watts did not execute a written assumption agreement accepted in writing by Lusher; hence Lusher did not release Larry and Shirley Watts from their obligations under the Lusher note and deed of trust, and as such, both continued to be bound by the obligations contained in the note and deed of trust.

Each year for eight years thereafter, Larry Watts acknowledged and renewed his original obligation on the Lusher note and altered the terms and conditions of his obligation on successive due dates [14]; Shirley

**14.** The original amount of the Lusher note obligation to which each co-maker was jointly and severally liable was $60,700, secured by real estate. On March 3, 1982, Lusher advanced an additional $23,400 to Larry Watts "to pay off business losses owed to private and commercial creditors." In consideration of that advance and amounts Larry owed under the Lusher note, Larry Watts issued a new note, dated March 3, 1982, for a new principal amount due in one year of $98,668. Unlike the original Lusher note, Larry Watts was the only maker and payor under the

March 3, 1982, note. On March 3, 1983, the amount due under the March 3, 1982, note was affirmed by Larry Watts through a subsequent document denominated "Extension of Original Note Secured by Deed of Trust" in the principal amount of $118,401.60 with an interest rate of 16% annually. One year later, on March 3, 1984, Larry Watts issued another note. That note included an "additional advance to open restaurant" in the amount of $38,500, plus the unpaid amount of $137,345.86 with an interest

Watts, however, did not renew her obligation. Eventually, Lusher foreclosed on the Greeley property, received a deed on the property and properly recorded. Later, CNB foreclosed its interest in the property, received a deed thereon and recorded. CNB then initiated an action in the district court to quiet title to Shirley's one-half interest in the property. The trial court granted CNB's motion on the ground that Larry's independent renewal of his obligation on the Lusher note had no legal force as to Shirley's obligation on the note. As the analysis below reveals, the trial court's ruling is entirely consistent with the statutory and decisional law in this state.

## II

Section 13–80–114, 6A C.R.S. (1987), a provision under the broader statutory scheme dealing with limitations on personal actions, states as follows:

> **Promise by one of parties in joint interest.** No joint debtor, obligor, or his personal representative or successor shall lose the benefit of the provisions of this article so as to be chargeable by reason only of any acknowledgment, promise, or payment made by any other of them.

The language of this section could not be more plainly crafted. An acknowledgment, promise or payment made by one co-maker of a promissory note operates only to avoid the bar of the statute of limitations as to that comaker, *and not as to the other co-maker.* To demonstrate the meaning of this provision even further, we have well-settled case law on which to rely. For greater than a century, appellate courts in this state have construed section 13–80–114, insofar as the statute requires interpretation, to mean that acknowledgments, new promises or payments of one endorser of a promissory note operate only to avoid the bar of the limitations statute as to himself or herself and not as to any joint maker. *See Coulter v. Bank of Clear*

*Creek County,* 18 Colo.App. 444, 72 P. 602 (1903); *Torbit v. Heath,* 11 Colo.App. 492, 53 P. 615 (1898). There simply is no other manner in which to interpret section 13–80–114.

Furthermore, this statute comports with the majority rule of law in sister jurisdictions:

> There seems to be no dissent from the proposition that where the promises of obligors are several, no admission or promise by one can remove the bar against the other in the absence of any authorization so to act.
>
> . . . .
>
> ... [T]he courts of many jurisdictions, particularly in the later cases, have repudiated the rule that an acknowledgement or promise by one joint debtor tolls the statute of limitations as regards another joint debtor, in favor of the view that *a new promise or acknowledgment by one of several joint obligors, although sufficient to bind the promisor personally, will not toll the statute of limitations against his co-obligors,* or revive, as against them a cause of action already barred by the statute. These cases proceed upon the theory that the statute affords protection to each of two or more persons jointly bound, that to render an acknowledgment by one available against another, there must be authority to act ... and that *there is nothing in the relation of joint debtors from which such an agency can be inferred.*

51 Am.Jur.2d *Limitation of Actions* § 354 (1970) (emphasis added); *see also id.* § 350 ("the statute of limitations will not be extended as to one spouse by the giving of a note in payment of such an indebtedness, or an acknowledgment thereof, by the other spouse").

As I indicated above, although Larry Watts acknowledged his continuing obligation on the promissory note, Shirley Watts

---

rate of 19% per annum. As of March 3, 1985, based solely on actions by Larry Watts, the principal balance due was $209,256.57, plus interest, more than three times the original obligation. On March 3, 1985, Larry Watts issued the final note in the principal amount of $209,256.57 due and payable, plus interest at 10%, on March 3,

1990. Although the notes after March 3, 1982, are denominated as "extensions" of existing notes, it is not necessary to determine whether these notes, with new consideration flowing to Larry Watts, constitute an extension of the original Lusher note.

did not. Hence, Larry's acknowledgment only tolled the statute of limitations as to his obligation under the Lusher note, such that section 13–80–114 compels the finding that Shirley defaulted on her obligation under the note on March 3, 1982. Under the applicable statute of limitations allowing a six-year period in which to bring a claim,[15] Lusher's right to assert a claim against Shirley for her default on the note became time-barred on March 3, 1988. Again, the universal rationale for this principle is that "there is nothing in the relation of joint debtors from which an agency can be inferred."

The final and determinative statutory provision that applies here is section 38–39–207, 16A C.R.S. (1993 Supp.). That provision mandates that:

> The *lien created by any instrument shall be extinguished*, regardless of any other provision in this article to the contrary, *at the same time that the right to commence a suit to enforce payment of the indebtedness or performance of the obligation secured by the lien is barred* by any statute of limitation of this state.

(emphasis added). Applying the language of this provision to the facts of this case, it is indisputable that "the lien created by [the Lusher note was] extinguished at the same time that [Lusher's] right to commence a suit to enforce payment of [Shirley's] indebtedness ... secured by the lien [was] barred by [the relevant] statute of limitation...." *See* § 38–39–207, 16A C.R.S. (1993 Supp.); *see also Birkby v. Wilson,* 92 Colo. 281, 285, 19 P.2d 490, 492 (1933) (construing the predecessor statute to mean that *unless an obligor keeps his or her indebtedness alive,* his or her lien is extinguished when the right to commence a suit to enforce payment of the indebtedness secured by the lien is barred by any statute of limitation of this state).

Thus, the issue before us and upon which we granted certiorari is easily decided. Shirley Watts did not act to keep her indebtedness alive and therefore, by the unambiguous terms set out by section 38–39–207, and *under our own construction of these words,* at the point in time when Lusher's right to enforce Shirley's obligations on the note became time-barred, the lien that was created by Shirley's separate obligation on the note was extinguished.[16]

### III

In its order of November 14, 1991, the trial court found that the "Quit Claim Deed did not contain language whereby the indebtedness to Marjorie Lusher was assumed by Larry Watts." Implicit in this finding is the conclusion that the obligations of Shirley Watts and Larry Watts under the Lusher Note were both joint and several and neither guaranteed or otherwise undertook to secure the payment of the other. Like the majority, I too can find no language in the Lusher note or the March 3, 1980 deed of trust sufficient to conclude that Shirley Watts' undivided one-half interest secured more than her own payment obligations under the Lusher note. Although Marjorie Lusher secured the promises of Shirley Watts and Larry Watts, jointly and severally, to pay "the principal of and interest on the indebtedness evidenced by

---

**15.** Section 13–80–103.5, 6A C.R.S. (1986) is the limitations statute that applies to actions dealing with the enforcement of promissory notes. That section, in part provides as follows:

> The following actions shall be commenced within six years after the cause of action accrues and not thereafter:
> (a) ... all actions for the enforcement of rights set forth in any instrument securing the payment of ... any debt, and all actions ... to recover the possession of personal property encumbered under any instrument securing any debt....

**16.** When Shirley conveyed all her property to Larry, the lien securing her promise to Lusher remained intact and was never assigned to Larry.

*Whiteside v. Rocky Mtn. Fuel Co.,* 101 F.2d 765 (10th Cir.), *cert. denied,* 307 U.S. 640, 59 S.Ct. 1038, 83 L.Ed. 1521 (1939) (holding that liens on conveyed property are wholly unaffected by the conveyance). Thus, that Shirley conveyed her interest in the Greeley property is not a material fact.

Here, a general review of the substantive law may assist in the understanding of this case. In its broadest sense, a lien is a legal claim as security for payment of some debt. *The lien is so far an incident of the indebtedness that it cannot be assigned unless the debt which it secures is transferred. Lewis v. Booth,* 3 Cal.2d 345, 44 P.2d 560 (1935). Because Shirley's indebtedness was not transferred, the lien securing her debt was likewise not transferred.

the note," she did not obtain from Shirley Watts an interest in Shirley's undivided one-half interest in the Greeley property to secure any and all present and future obligations or payments owed by Larry Watts under the original Lusher note.

It remains a mystery to me as to how the majority can conclude that "[t]he provisions of the note and deed of trust ... encumber[ed] the interests of each to secure the obligations of both." Maj. op. at 958. I do not question the majority's conclusion, as set forth in footnote 10, that Shirley Watts as a co-maker can effectively encumber her own property to secure an obligation of another person such as Larry Watts. Maj. op. at 956, n.10. However, other than Shirley Watts' marital relationship with Larry Watts, which should be of no effect alone, I am at a loss to divine a relationship or act by Shirley Watts that gives rise to such an obligation and the majority has not revealed sufficient language in the note or deed of trust to reach such a result.

The majority is concerned that the "scope of the obligations secured by the lien" as created by the note and deed of trust will be defeated if the lender, here Marjorie Lusher, cannot foreclose on the entire Greeley property until all the obligations secured by the deed of trust have been satisfied. This approach to resolving the present case gives fresh meaning to the concept of unbridled judicial legislation. The General Assembly has previously determined the public policy of Colorado. By its enactment of section 13–80–113, the General Assembly made a choice it was entitled to make regarding the extinguishment of claims. The wisdom of its decision is brought out by the facts of this case.

The statutory scheme, when applied as written, is not unfair to Lusher. She had six years to prevent the "scope of the obligations secured by the lien" from being defeated. Marjorie Lusher simply elected not to act. However, here, the will of the majority will excuse her omission, despite statutory provisions to the contrary.

## IV

When the General Assembly enacts legislation based upon a reasoned public policy decision, it is not our role to rewrite those laws. Rather, we are to apply statutes as they are written, and leave any revisions to the legislature. I wish to make clear that this is not a case where "the legislature has voiced its wishes in muted strains and left it to the court to discern the theme." *Rosado v. Wyman*, 397 U.S. 397, 412, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442 (1970). The relevant statutory language is unambiguous. It is our sole responsibility to apply the clear language to the facts of this case, not to accroach to this court the role of the legislature. Because I would reverse the judgment of the court of appeals in reliance upon the clear language of controlling statutes and our precedent, I respectfully dissent.